## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

**THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,**

      **Plaintiff,**

**v.**
                                   **Case No. 20-CV-233-JFH**

**JONATHAN JAMES TUBBS and
C.M.P., a minor,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the motion for default judgment and relief in interpleader, filed by Plaintiff The Prudential Insurance Company of America ("Prudential"). Dkt. No. 18. For the reasons set forth below, the motion is granted.

## I.    BACKGROUND

Prudential filed its complaint in interpleader on July 7, 2020. Dkt. No. 2. Prudential claims that it issued a group life insurance policy to Wal-Mart Stores, Inc. (the "Plan"). Dkt. No. 2 at 2; Dkt. No. 2-1. According to Prudential, Catrina J. Pope ("Pope") was an eligible employee of Wal-Mart Stores, Inc., who received life insurance coverage under the Plan. Pope died on February 5, 2020. Dkt. No. 2 at 3; Dkt. No. 2-2. Under the Plan, life insurance benefits in the amount of $20,000 (the "Death Benefit") became due to a beneficiary or beneficiaries. Dkt. No. 2 at 3. However, at the time of her death, Pope had not designated a beneficiary to her Plan life insurance coverage. Dkt. No. 2 at 3; Dkt. No. 2-3.

The Plan's Beneficiary Rules provide, in relevant part, that any amount of insurance for which there is no beneficiary at the insured's death will be payable to the first of the following:

the insured's "(a) surviving spouse or domestic partner; (b) surviving child(ren) in equal shares; (c) surviving parents in equal shares; (d) surviving siblings in equal shares; (e) estate." Dkt. No. 2-1 at 53. Pope was survived by her husband, Defendant Jonathan James Tubbs, and her minor daughter, Defendant C.M.P. Dkt. No. 2 at 3.

However, at the time this action was filed, Tubbs had been charged with Pope's murder and Prudential believed that he may be precluded from receiving the Death Benefit by federal common law and/or 84 O.S. § 231 (the "Oklahoma Slayer Statute").[1] Dkt. No. 2 at 3-4. Prudential asserts that if Tubbs is determined to have forfeited his right to the Death Benefit pursuant to federal common law and/or the Oklahoma Slayer Statute, it would be as if he predeceased Pope and the Death Benefit would be payable to C.M.P., as Pope's only child. Dkt. No. 2-4.

Tubbs has not yet asserted a claim to the Death Benefit, but On May 20, 2020, C.M.P.'s guardians, Mary Jo Pope and Mark Pope[2], asserted a claim to the Death Benefit on C.M.P.'s behalf. Dkt. No. 2 at 4; Dkt. No. 2-3; Dkt. No. 13. Prudential argues that, under the circumstances, it cannot determine who is entitled to the Death Benefit and that because the actual or potential claims of Defendants are conflicting, Prudential may be exposed to multiple liability. Dkt. No. 2 at 4. Prudential states that it "is ready, willing and able to pay the Death Benefit, plus applicable interest, if any, payable in accordance with the terms of the Plan and to whomever this Court shall designate." *Id.* Prudential disclaims any interest in the Death Benefit[3] and respectfully requests that this Court determine to whom it should be paid. *Id.*

---

[1] Tubbs was convicted of Pope's murder on May 13, 2021. *See* Verdict Form, *State of Oklahoma v. Jonathan James Tubbs*, CF-2020-00066, May 13, 2021.

[2] Mary Jo Pope and Mark Pope were appointed co-guardians of C.M.P. on December 2, 2015. *See* Dkt. No. 18-1.

[3] The Tenth Circuit "has recognized the common practice of reimbursing an interpleader plaintiff's litigation costs out of the fund on deposit with the court." *Transamerica Premier Ins. Co. v.*

C.M.P. filed an answer to the complaint in interpleader on July 30, 2020.  Dkt. No. 13.

Tubbs did not file an answer, and on December 7, 2020, upon Prudential's motion, the Clerk of

Court filed an entry of default as to Tubbs.  Dkt. No. 16; Dkt. No. 17.  Prudential has now moved

for default judgment against Tubbs and seeks relief in interpleader.  Dkt. No. 18.  C.M.P. has filed

a response to the motion indicating that she does not oppose the relief requested.  Dkt. No. 19.

## II.    LEGAL STANDARD

When a defendant fails to answer or otherwise defend against an action, Rule 55 of the

Federal Rules of Civil Procedure provides two distinct sequential steps: the entry of default and

the entry of default judgment.  *See* Fed. R. Civ. P. 55(a), (b); *Guttman v. Silverberg*, 167 Fed.

Appx. 1, 2 n. 1 (10th Cir. 2005) (unpublished) ("The entry of default and the entry of a judgment

by default are two separate procedures.").  Initially, a party must ask the Clerk of the Court to enter

default. Fed. R. Civ. P. 55(a).  After default has been entered, the party may seek default judgment.

*Garrett v. Seymour*, 217 Fed. Appx. 835, 838 (10th Cir. 2007) (unpublished) (holding that entry

of default is a prerequisite for the entry of a default judgment under Rule 55(b)(1)).

Upon an entry of default, the Court takes all the well-pleaded facts in a complaint as true.

*See Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016) (noting that after default is entered, "a

defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those

facts.") (internal quotation marks and citation omitted); *United States v. Craighead*, 176 Fed.

---

*Growney*, 70 F.3d 123 (10th Cir. 1995) (internal quotation marks and citation omitted).  Under this practice, fees may be awarded to an interpleader plaintiff who:  (1) is disinterested; (2) concedes liability; (3) deposits the funds into court; (4) seeks discharge, and (5) is not culpable as to the subject dispute of the interpleader proceeding.  *Id.*  Upon depositing funds with the Court, Prudential will meet these requirements.  However, Prudential indicated that it would not seek to recover its litigation costs unless its motion for was opposed or denied (in full or in part). Dkt. No. 19 at 9-10.  As neither of these conditions has been met, the Court need not address the issue of Prudential's litigation costs.

3

Appx. 922, 924 (10th Cir. 2006) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (unpublished) (internal quotation marks and citation omitted).  However, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages sought.

## III.   DISCUSSION

### A.  Jurisdiction

Before granting a motion for default judgment, the Court must ensure that it has subject-matter jurisdiction over the action and personal jurisdiction over the defaulting defendant.  *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986); *see also Dennis Garberg & Assocs., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771-72 (10th Cir. 1997) ("We have noted earlier that judgment by default should not be entered without a determination that the court has jurisdiction over the defendant.").

"Subject matter jurisdiction involves a court's authority to hear a given type of case and may not be waived."  *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) (citations omitted).  "To establish subject matter jurisdiction under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000."  *Id.* at 1225.  Here, Prudential asserts that federal question jurisdiction exists because the group life insurance policy at issue in this action is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 *et seq.* ("ERISA").  Dkt. No. 2 at 2; *see* 29 U.S.C §§ 1132(e) and (f) (providing that the district courts of the United States shall have exclusive jurisdiction over civil actions relating to benefits due under ERISA plans, without respect to the amount in controversy).  Defendants do

not dispute that the policy at issue in this case is governed by ERISA or challenge the Court's subject matter over this action.  Dkt. No. 19.

"In reviewing its personal jurisdiction, the Court does not assert a personal defense of the parties; rather, the Court exercises its responsibility to determine that it has the power to enter the default judgment." *Williams*, 802 F.2d at 1203.  Plaintiff "bears the burden of establishing personal jurisdiction over [a] defendant." *Intercon, Inc. v. Bell Atl. Internet Sol*., 205 F.3d 1244, 1247 (10th Cir. 2000); *see Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179 (10th Cir. 2014); *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).  Where, as here, the issue is presented for decision on the basis of allegations and affidavits or written materials, Plaintiff "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation omitted).  To establish personal jurisdiction of a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers*, 618 F.3d at 1159 (internal quotation omitted).

Under Oklahoma law, the personal jurisdiction inquiry is simply the due process analysis. *Intercon*, 205 F.3d at 1247; *see Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012).  The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

There are two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb*

*Co. v. Super. Court of Cali.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)).  "As a general matter . . . if a nonresident party has continuous and systematic general business contacts with the forum state, general personal jurisdiction might exist."  *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

For a court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum.  *Bristol-Myers*, 137 S. Ct. at 1780; *see also Daimler*, 571 U.S. at 127.  In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted)).  Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Id.*

"A specific jurisdiction analysis involves a two-step inquiry."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).  "First [the Court] must consider whether 'the defendant's conduct and connection with the forum are such that he should reasonably be anticipated being haled into court there.'"  *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297).  The minimum contact inquiry requires both that the out-of-state defendant "purposefully directed" its activities at residents of the forum state and that the plaintiff's injuries "'arise out of' defendant's forum-related activities."  *Dudnikov v. Chalk & Vermillon Fine Arts, Inc.,* 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King Corp.,* 471 U.S. at 477).  "Second if the defendant's actions create sufficient minimum contacts, [the Court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."  *Benton*, 375 F.3d at 1075.

Here, Prudential has alleged that both Tubbs and C.M.P. are citizens of Oklahoma. Dkt. No. 2 at 1. As to C.M.P., this is confirmed by the claim form attached as an exhibit to Prudential's Complaint. Dkt. No. 2-3. Defendants' Oklahoma citizenship is sufficient to establish general jurisdiction. Accordingly, the Court finds that Prudential has met its burden to make a prima facie showing that jurisdiction exists.

### B. Default on the Interpleader Complaint

"Interpleader is a form of joinder open to one who does not know to which of several claimants it is liable." *Amoco Prod. Co. v. Aspen Group*, 59 F.Supp.2d 1112, 1114 (D. Colo. 1999) (citation omitted). "An interpleader action allows the stakeholder to bring the several claimants into a single action and to require them to litigate among themselves to determine which has the valid claim." *Id.* "When an insurer brings an action of interpleader to facilitate the handling of multiple claims to a limited fund, it admits its liability as an insurer to make available the proceeds of its policy." *Gen. Accident Group v. Gagliardi*, 593 F. Supp. 1080, 1089 (D. Conn. 1984). "It concedes its obligation to pay the proceeds to someone, but concedes no obligation to any one in particular." *Id.* "That obligation accrues only upon the adjudication of conflicting claims, and that adjudication cannot occur absent a timely and formal assertion of a claim against the proceeds on deposit." *Id.*

"[T]he failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted." *Amoco Prod. Co.*, 59 F.Supp.2d at 1116 (internal quotation marks and citation omitted); *see Gulf Coast Galvanizing, Inc. v. Steel Sales Co.*, 826 F. Supp. 197, 203 (S.D. Miss. 1993) (same). Further, in an interpleader action in which all but one named interpleader defendant has defaulted, the remaining defendant is entitled to the res. *Amoco Prod. Co.*, 59 F. Supp.2d at 1116;

*see also Nationwide Mut. Fire Ins. Co. v. Eason*, 736 F.2d 130, 133 n. 4 (4th Cir. 1984) ("if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund."); *New York Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 n. 6 (2d Cir. 1983) (default of interpleader defendants expedited conclusion of interpleader action by obviating need for judicial determination of answering defendant's entitlement to stake); *Gen. Accident Group*, 593 F. Supp. at 1089; *Sun Life Assur. Co. of Canada v. Conroy*, 431 F.Supp.2d 220, 226 (D.R.I. 2006).

Here, Tubbs was personally served with the complaint in interpleader on September 30, 2020. [Dkt. No. 15]. Tubbs, along with C.M.P., is a potential beneficiary of the Death Benefit as a result of Pope's death. The time for Tubbs to answer expired on October 21, 2020. [Dkt. No. 15]. The Clerk of Court entered default against Tubbs on December 7, 2020 [Dkt. No. 17], and Tubbs has not attempted to set the default aside. The default terminates Tubbs' interest, if any, in the Death Benefit. *See State Farm Mut. Auto. Ins. Co. v. Wagnon*, 959 F.2d 245 (10th Cir. 1992) (unpublished) ("A default judgment entered against a claimant in an interpleader action terminates that party's interest in the fund at issue."). Because Tubbs has defaulted by failing to answer the complaint in interpleader and has forfeited his right to proceeds under the Plan, C.M.P., by virtue of being the sole remaining interpleader defendant, is entitled to the Death Benefit. *Gagliardi*, 593 F. Supp. at 1089 ("The failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the res can be viewed as forfeiting any claim of entitlement that might have been asserted.").

**IT IS THEREFORE ORDERED** that Prudential's Motion for Default Judgment and Relief in Interpleader [Dkt. No. 18], is hereby GRANTED;

**IT IS FURTHER ORDERED** that Prudential shall distribute the sum of $20,000, representing the Death Benefit due, plus applicable interest, to Mark Pope and Mary Jo Pope as co-Guardians of the person and estate of C.M.P;

**IT IS FURTHER ORDERED** that Prudential is dismissed as a party and the Court Clerk is directed to terminate Prudential as a party;

**IT IS FURTHER ORDERED** that Prudential is discharged from any further liability to Defendants arising out of the subject matter of this action and Defendants are enjoined from instituting any action or proceeding against Prudential concerning the Death Benefit and interest accrued thereon.

Dated this 20th day of August 2021.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE